315-0425 consolidated with 315-0426 for oral argument only, Village of Bolingbrook by John Maniatis v. Illinois-American Water Company and American Lake Water Company by Mark Wood Ford Mr. Maniatis, you may proceed Members of the panel, good afternoon. Council, this is my first opportunity to argue in this grand building and it's a pleasure to be here. Thank you In the spirit of not restating that which has been set forth in two sets of briefs that cover somewhat similar issues, I'll try to keep my remarks this afternoon relatively brief. The Village of Bolingbrook's appeal is very limited in nature and scope. The determination of liability made in favor of Bolingbrook by the lower court, in our view the lower court and not the Illinois Commerce Commission should determine the damages that ensue as a result of the breach. This has not and never has been a case involving rates. It is not a case of reparations. It is simply a matter now of determining damages that is really nothing more than a calculation to establish how much more did the customers who were impacted by the breach pay beyond that which they should. And isn't that just exactly the kind of case that goes to the commission? In our view it does not. Because? Because rates as that term is used relative to the commission and in the cases cite to essentially published tariff rates. This case is not about an unfair rate. It's not about a discriminatory rate. It's about the failure to live up to a promise set forth in a contract. It isn't at the end of the day. Every agreement, you know, I buy water from a water company and electricity from an electricity company and there's published rates, but at the end of the day between me and that company there's a contract. They'll pump electricity into my house and I'll pay the bill. And then if I don't pay the bill, they can shut it off. If I decide, hey, you charged me too much, you've overcharged me, that's in essence a breach of our contract. But isn't it all really clear that that goes to the commission? In that instance I would agree with your honor that it does, but that's a different scenario than what we have here. Well, I guess just so you can help me out and understand your position, it seems to me your argument is, well, this is based on contract. And well, every agreement between every utility company and purchaser of their product is based on contract. Is it not? I agree with your honor. Maybe a little better context of the contract that is really at issue here will be helpful. This is not a case in which we're talking about sort of the ultimate consumer's contract with a utility for the provision of service. This is a little bit more convoluted than that. At a point in time, American Lake Water's predecessor company decided that it wanted to construct a pipeline to transport Lake Michigan water into the western suburbs. American Lake Water, as part of its process in constructing that pipeline, which began at Bedford Park and ended at a destination in the village of Bolingbrook, entered into an agreement with two initial customers, one being the village of Bolingbrook and one being Illinois American Water Company. That contract is the contract at issue in this case. And in that contract, as Judge Yards determined, it was very clear and unambiguous that it was the intention of the parties at that time that should an additional customer be added to the system, in this instance it happens to be the village of Plainfield, that the initial customer, which is also referred to as the customer in the delivery agreement, would never pay more than water than the additional customer. And so I guess what I'm saying, I get regular briefs and all that, but I don't mean to be flip, but that just leaves me with a legal question of so what? I mean, at the end of the day, you're saying the utility overcharged this, and the case law says that goes to the commission, plain and simple. And I'm not talking about the merits of your case, whether they do in fact owe you all money, it's just that isn't the case law as clear as it can be that this is an issue for the commission, and there's nothing about the fact that, unless you can make me understand it, that this other contract somehow takes it out of the commission's jurisdiction, because every utility agreement between them and purchasers are based on contract. Well, I understand your question, your honor, and I'll try to do a better job of answering it. If that were the case, then virtually every issue that involves a utility rate would end up before the ICC, and I think the case law is instructive that that isn't always true, that in fact there are cases out there in which there are utilities that are defendants that are not before the Illinois Commerce Commission because it is indeed a breach of contract type of case. I'll try to do a little better job of distinguishing rate versus rate, if you will. We, the village of Bolingbroke, are not suggesting that the rate that was being charged to the village of Plainfield was any different than that which was being charged to Illinois American, which, if your honors may recall, stepped into the shoes of Bolingbroke, and that gets a little confusing, but I think the court probably understands that when the breach occurred, the customer actually was Illinois American and not the village of Bolingbroke. But be that as it may, it's because, let me try it from a different angle, the intent of the parties in our view was very clear, that no additional customer would benefit from any additional terms or conditions that would result in them paying American Lake Water less for money than the initial customers. That reimbursement did just exactly that. It had the absolute direct effect of reducing Plainfield's cost of water and what it paid to American Lake Water. And that is your breach of contract claim and therefore you owe us money, right? Correct. But at the end of the day, that's the case in every one of these cases. I got overcharged by the utility company, whether it be the gas company, the electric company, because we had an agreement too. Look, you supply me electricity or water or whatever it is and you'll charge these certain rates. Well then I find out you were charging me more than you were supposed to. Like I said, I understand your distinction, but it seems to me it's a distinction without a difference. When we just look at contract law. Well, and again, without belaboring the point, I'm sorry. No, my question is related, but go ahead. I'll try to finish this point, if I may, without belaboring it. It's our view that there is a difference and it's not just a semantic difference. We're not talking about an issue of an improper rate, of an infrastructure problem, of a service problem. We're talking about a breach of a promise. And the promise was you're not going to have to pay any more than anybody we bring out of this system. Clearly, the lower court determined that was the case. As a result of a breach of contract, the ICC doesn't have any special expertise in anything other than rates. And we're not arguing that the published tariff rate, the rate that was being charged, was excessive or somehow improper. We're simply saying that very cleverly, but very wrongfully, American Lake Water came up with a device to lower the cost of water to a new customer for whatever reason by virtue of a reimbursement. That's a new term, a new condition, exactly that which the parties agreed would not occur. And it affected the cost using the same rate, if you will, Your Honor. And that's why we think this is a breach of contract case, where a trial court simply needs to address the damages that result from that or it's discriminatory or impacts infrastructure. If I may make one more point that might help illustrate a little bit. If this matter goes before the Illinois Commerce Commission to address the question of damages, they're in the business of adjusting rates and modifying rates. In fact, the water companies have stated in their brief, if I'm not mistaken, that one of the things the village has asked for is a downward adjustment of the rates. That's not correct. We have not ever suggested to the lower court or in our pleadings that we seek a downward adjustment of the rates. In fact, I would suggest to the court that if the ICC were to determine damages, that's one of the few things that they can do is change a rate. The damages in this case need to be retrospective. Changing the rate or adjusting the rate would be prospective. The folks that have been impacted by paying too much on their water bills, they may not even live in this area anymore. So how would an adjustment of a rate prospectively cure the damage to those that were affected by the breach? And that's what the ICC could do. Well, first of all, a little false premise there, because the commission has and does in some cases say, hey, you've overcharged them. Give them their money back. All right? So the commission, it's not like the commission can't do that. They not only can, but they do do that. They found there's been an overcharge here, so reimburse these folks. I understand, Your Honor, and I'd appreciate your questions. And I'll simply conclude my thoughts with I respectfully and very strongly believe that, indeed, this is a breach of contract case. That's been determined in a trial court. It's the proper tribunal to determine what the damages are. I think you spoke to the question that I have, so keep going. The question of jurisdiction, of course, is addressed in the water company's appeal. We've talked about that, I think, to your point, Your Honor. I'll simply put a bow on it and simply say that they've tried to characterize this as a different kind of case. We don't think it is a different kind of case for the reasons I've stated. It's really not, in our view, even in accordance with the case law and how it defines reparations, not appropriate for an ICC review. It's not clear to me how you conclude that this is not reparations. It seems to fit right into the definition of a reparation. You're claiming that you had to pay too much, and you're asking to have it back or be paid back for what you were overcharged. And that's reparations, and under the statute, isn't reparations confined to the Illinois Commerce Commission? Your Honor, I would respectfully submit that it is not our position that the rate was excessive. The rate, that is the published tariff rate, that in this instance is referenced and referred to as the unit charge, was excessive, or that there was an overcharge because of the rate itself. It effectively became an overcharge because of the reimbursement, but the ICC would be addressing an argument if we were, before the court, suggesting that that published tariff rate was somehow excessive or improper. It only became excessive, the overcharge only occurred because of the reimbursement, not because of the rate in and of itself. The reimbursement was based on rebate from a transportation charge, right? The reimbursement, Your Honor, was the result of an agreement between American Lakewater and the village of Plainfield, whereby it agreed to provide essentially a credit on their bill towards a transportation charge with a third-party company, which by coincidence happens to be the sister company of American Lakewater, with the same president and same employees. Thank you. And so it's the reduction by virtue of that reimbursement that impacts that charge, and the net result is an additional customer paying less for water. It's not the rate that's being, the rate is being impacted by virtue of the reimbursement. It's not that the rate itself is defective. We don't disagree that the rate that was being charged to Bolingbrook and Plainfield were the same. Well, I mean, is there some reason to believe the folks at the Commerce Commission aren't capable of understanding that argument? Well, they may well be, Your Honor, but it's our belief that this has been determined to be a, the forum was chosen, the circuit court, based on a breach of contract. The circuit court determined summarily that this was a contract case and there was a breach, and therefore it's our view, respectfully, that the circuit court should complete this process. It's equipped to determine damages. Well, that raises another question. Without talking about the merits of this ruling, right or wrong, it doesn't sound unreasonable, but if the trial court didn't have jurisdiction because this belonged in the Commerce Commission, is that order, if the trial court had no jurisdiction, was that order void? Well, obviously, Your Honor, it's our position that it indeed did have jurisdiction. Its analysis was correct in the first instance. Only Judge George's sort of deference in his ruling on the reconsideration motion did the question of damages even become an issue. And so our view is clearly the entire case belongs before the trial court, but most certainly the issue of breach of damages, the breach itself certainly does. One more question. Does the propriety of the transportation costs come into play at all in resolving the damage issue? It does not, Your Honor. The transportation costs, if you're referring to the movement of the water from the point where Illinois American then takes that water and moves it into the village of Plainfield for which the reimbursement was suggested, has nothing to do with this. The analysis, in our view, as we point out in our papers, clearly stops where American Lake Water delivers that water to a destination point. That's the apples-to-apples analysis. The transportation arrangement between the village of Plainfield and Illinois American has nothing whatsoever to do with this, in our view. Thank you. Welcome, Mr. McMahon. Mr. Rodatori? Rodatori, yes, Your Honor. May it please the Court, Mark Rodatori for defendants Appellants and Appellees, American Lake Water Company, Lake Water, and Illinois American Water Company, Illinois American. I'd like to reserve five minutes for rebuttal. Our appeal raises two issues for review. The first is whether the circuit court erred in splitting Bolingbroke's breach of contract claim into breach and damages for purposes of jurisdiction in deciding the breach issue when the essence of Bolingbroke's claim is rape relief for utility services. Our position is that the circuit court did not have jurisdiction over the entirety of the claim, both breach and damages. The second issue is if the court had jurisdiction, whether it erred in finding that the defendants committed breach for the 2004 to 2008 time period. The court doesn't have to reach the second issue if it determines that the circuit court had no jurisdiction to decide breach. As to jurisdiction, the Illinois Supreme Court's been very active in this area. Indeed, over the last five years, it's decided two cases, Boussiteri case and Sheffler case, and in both cases held that the ICC had exclusive jurisdiction because the claims in those cases involved rape reparations for utility services. According to the Sheffler court, a claim is for reparations when the essence of the claim is that a utility has charged too much for a service. So the dispute today rests primarily over what the essence of Bolingbroke's claim is. And no matter how counsel characterizes it or what labels he attaches to it, the essence of Bolingbroke's claim is that the defendants charged too much for water delivery service. And there are at least three separate and dispositive sources in the record that confirm that's the case. First, the complaint alleges, quote, that you didn't charge for Lake Michigan water, end quote. In other words, the rape. That lake water charge, Bolingbroke was not, quote, end quote, reduced in light of what plain field was charged. That's paragraphs 39 and 40 of the complaint. Bolingbroke alleges it paid too much because the rape was not reduced. Second, Bolingbroke's Quokka representative testified at his deposition under oath. And you'll see this in response to our statement of material facts in connection with our summary judgment motion. The plaintiff agreed, quote, Plaintiff admits, Mr. Dre, agreed with the statement that the crux of the claim in count one is that ALWC's rate for water delivery service was too high. That's at record C-5303. Third, Bolingbroke has conceded it in its briefing before this court. Bolingbroke has written, quote, the charge was too high, too high, when compared to plain field. Opening brief at nine. And Bolingbroke's also written that, quote, the discrepancy in the rate is obvious, end quote. That's at page 10 of their opening brief. So those statements in the complaint, the sworn testimony of the Quokka representative, in briefing before this court, confirm that the ICC has exclusive jurisdiction because the nature of the relief being sought is a reduction in the rate paid. Bolingbroke wants its money back. They want a portion of the money that they paid back. They want a partial refund. They characterize the essence of their claim as one of civil damages. They say it's a private party dispute involving a contract, not a dispute over a rate or a tariff. But the ALS Supreme Court has been very clear. Labels don't matter. Labels do not matter. The test, according to Shuffla, is, quote, consider the nature of the relief requested rather than the basis for seeking the relief. Similarly, the First District in the village of Evergreen Park versus ComEd said, quote, the fact that the plaintiff labels its action a breach of contract action is not dispositive, nor does it transform plaintiff's action into a civil action for damages. Quote. The same applies here. Now, counsel has said that it's not really a rate, it's a dispute over a rate provision or a pricing provision, but that pricing provision is undeniably part of the rate at issue. How do we know that? Because the Public Utilities Act says so. 3-116 defines rate as any charge and any contract relating thereto. Second, the ALS Supreme Court told us just last year in Madigan versus the ICC that, quote, a rate is more than a number. It's also a design. A commission's decision in a rate case does not involve simply what utilities may charge their customers, but how they do so. That's paragraph 23 of the Madigan case. So the rate protection provision about which they complain relates to how Bolingbroke was charged in light of this additional customer pricing. That's part of rate design. It's part of the rate. They also make the point that there's no argument here that the tariff was excessive. They say we're not talking about a tariff, but we've submitted the tariff as part of the record. It's at record C-5307, and the tariff makes clear that from the 2004 to 2008 time period, the pricing provision that they're claiming has been breached is part of the tariff. It's part of the tariff that the ICC reviewed and approved. Rate reparation claims are retrospective in nature. They can be, I suppose, prospective, but a refund claim is I want my money back. That's retrospective. And I think it's worth noting that the circuit court, when it granted in part our motion for reconsideration, it recognized or acknowledged that the ICC had jurisdiction at least over damages. It found that the ICC could use its rate-making expertise and had knowledge of the infrastructure, and that knowledge would help it figure out how to compensate the plaintiff in connection with its request for refund. But the court committed error in splitting the case into two for jurisdiction. There's simply no authority, I would say, for splitting a claim into a breach issue and damages for jurisdiction purposes. The test is to look at the nature of the relief requested, and when you do so here, it's undeniable that Bolingbroke seeks a refund. of the rate it paid. So in conclusion, the ICC had exclusive jurisdiction over the entirety of Bolingbroke's claim. The court should dismiss this case because the court does not have jurisdiction to hear it, and that includes binding the circuit court's decision void. I just have to ask, has it occurred to you all that you might win a battle and still lose the war? Justice Schmidt, no, because we will establish that there was no breach, and that's the second issue I'm here to talk to you about today. So assuming the court had jurisdiction, it would have granted partial summary judgment. Just a word about the facts very briefly. A word about water delivery and water transportation services because the distinction is critical to the issue of breach. We have provided the court a map, it's in our opening brief, that identifies the services and their location, and in essence, water delivery service is akin to the sale of water itself, like a commodity. Wholesale water, that's water delivery. And in this case, water was delivered through these massive 5-foot-wide pipes from Bedford Park to near Bowling Brook, and Lake Water charged Bowling Brook for water delivery at about $3 per unit, $3 per 1,000 gallons. Water transportation, separately tariffed, separately recognized as a separate service, is an additional different service that was provided through a smaller network of pipes, in this case, through Bowling Brook. Water was transported from that point of delivery near Bowling Brook to Plainfield through the smaller network of pipes, and Illinois American Water charged Plainfield for water transportation at $0.20 per unit, or per 1,000 gallons, and then Lake Water reimbursed half that, about $0.10, toward that $0.20. The Circuit Court's decision on breach was an error principally, because Lake Water didn't breach the contract pricing provision that reimbursed Plainfield for transportation costs Plainfield incurred in connection with water transportation. If you look at Section 7.5 of the Water Delivery Agreement, it says nothing about water transportation. It's all about water delivery. The word transportation never appears. And then secondly, the structure of the agreements between the parties demonstrates that the Water Delivery Agreement was only about water delivery. The parties had a separate transportation agreement and a separate water delivery agreement. And then third, there's other compelling evidence that proves it as well. As I indicated, the ICC has recognized these services as separate services. They're separate tariffs for them. And the water delivery tariff doesn't mention transportation, and the transportation tariff doesn't mention water delivery. Bolingbroke, at one point, figured out it didn't need water transportation, so that agreement was rescinded, further showing that it was never part of the Water Delivery Agreement, and Bolingbroke never paid for water transportation service during the period in question. And even if you accept Bolingbroke's argument that you should look at the cost of water, you should look at the invoice charge for the purchase of water. The contract wasn't breached because Plainfield paid more. It's undisputed that Plainfield paid for water transportation. Bolingbroke did not pay for water transportation. And it's undisputed, you heard counsel say today, that they paid the same rate for water delivery. Well, if Plainfield and Bolingbroke paid the same rate for water delivery, Plainfield had to pay for water transportation, though at a reimbursed rate. Plainfield still paid more. They paid more. There was no lesser unit charge under the contract, and no breach. Thank you. Counsel says the analysis should stop at the point of delivery. Well, that's fine. If you do that, if you stop the analysis at the point of delivery, which I assume means near Bolingbroke, and not include the water transportation, then you don't include the reimbursement. You don't include the water transportation, and you don't include the reimbursement toward the water transportation. You're going to stop the analysis at the point of delivery. Then you're just looking at what the water delivery rate or charge was to the two companies, and they were the same. We respectfully request that this court issue an order dismissing this case because the circuit court had no jurisdiction, and should the court find that the circuit court had jurisdiction, reverse the finding of breach for the 2004 to 2008 time period. So is it your position that if there had not been a damage component here, but simply an issue of whether or not the contract had been breached, the circuit court would have had jurisdiction to make that decision, that it's only damages that brings it into the realm of the ICC? No, not at all. It is not just damages that brings it into the realm of the ICC. The reason why the ICC has jurisdiction is based on the relief being sought. They are claiming they're entitled to a refund, a partial refund. It's putting aside the label of breach of contract and what the name of their claim is. The relief they want is money back, and the Illinois Supreme Court has been very clear that if your claim is that you paid too much for service, for utility service, that's a rate reparation claim. That's a claim that only the ICC can decide. So our position is that the entirety of the claim, issues of breach, issue of damage, or any other issue that relates to the case should be decided by the ICC because of the relief sought. Thank you, Mr. Littletown. And you will have five minutes back to go. Mr. Maniatis? Thank you. I'm not quite sure where to begin, but I'll try. Let's start with jurisdiction again. Without going through each one of the cases that counsel has referred to, they're in the briefs. We've done our best to distinguish and explain why those cases differ from this case in terms of why this is not a case for reparations and those are. In some, virtually everyone, if not all of them, based upon my current memory, involved some kind of issue relative to service. And the utility's lack of service, failure to serve, which impacted rates and because of the interrelationship between the service interruption or that type of thing, it had a direct impact on what to do with rates. This has nothing to do with service. It's simply about a charge. And while, yes, we're seeking a refund, it's, again, not a refund in the nature of which the courts have discussed ICC jurisdiction. I'll rely on our briefs to address those cases in more detail. Two very experienced jurists on three different occasions were faced with the question of whether or not the circuit court had jurisdiction. And in each one of those occasions, they determined that, in fact, it did. With one exception, Judge Jarz's decision in his motion, the defendant's motion for reconsideration regarding whether damages should be determined. I'll move on to the briefs very quickly. Do you have a question? My question relates to the transmission and delivery charges that are recognized as being unbundled and separate and they can be provided by different carriers. And you have said and I believe has also said that for straight transmission, selling the commodity of the water, that those prices were the same. Bolingbroke did not need to have the delivery of the water, so they didn't have a contract for that. There was no price charged to them. The price for what they got and the price for the delivery of the water to plainfillers was the same. So I guess that's the question that I have, is that when you get into the, because you said that this rebate and giving them back 10 cents out of the 20 cents is something that is not heard of and isn't something that had been done before. To me, that seems to fall directly under the authority of what the ICC does is determine what services and what is a reasonable charge for those services. And somehow you're saying that by them getting this money back, 10 cents, that's somehow reducing the amount for the transmission of the water. And since they're allowed to charge differently and recognize that that is a separate service, I don't know how you can just say, well, this is just strictly contract interpretation. Because it does impact, to me, what is allowed under the tariff agreement, what has been determined to be reasonable. Because you're saying, no, they can't then give them back 10 cents and say that they're somehow paying the same amount when they're actually paying less. Because that charge doesn't relate to the transmission, which is all you have to compare to. So it seems as if it's directly an interpretation of the reasonableness or they're including this type of service in that tariff. How can you get over that? I'll try to explain. Maybe I can explain it this way. If American Lake Water did not provide the reimbursement to the village of Plainfield, there wouldn't be a breach. Why not? Because the charge by American Lake Water to the customer, being the village of Plainfield and at this point in time, Illinois American, would have been the same. And in fact, if I may point to the record at C4550 and 4451, that is a typical invoice from American Lake Water to the village of Plainfield that describes essentially the math and calculation and illustrates how the village of Plainfield ended up paying less for the very same service than the other customer. And it's for this reason why we respectfully suggest that it's not an ICC issue. Because we're not arguing they couldn't provide the reimbursement. We're simply suggesting if you're going to provide an additional customer with a new term that effectively lowers its cost for the very same service, for the transmission of that water from point A to point B, then you need to make an adjustment to those charges that you are making to the original customer. That was not done. That's the differential. That's the breach of the promise. And that's not sort of the tariff rate issue. That's the failure to provide both customers with the same terms and conditions. But you aren't paying them to get the water to the end consumers or bring it any further down. And Plainfield is. Plainfield has an agreement to move it from the point where American Lake Water delivers it to, let's say, the village of Plainfield. And to use Your Honor's question to me earlier, so what? That has nothing whatsoever to do with this analysis. If the village of Plainfield, because of its location, needs to engage another company to move the water further, that's their issue. That has nothing whatsoever to do with the agreement between American Lake Water that it would not provide any additional customers with better terms and conditions that lower the cost of water of its service. And providing a reimbursement for a different service does exactly that. If I may. Can I just so I'm clear? At the end of the day, just raw numbers here, and we'll use X's because I don't have that many. So Bowling Brook was paying Lake Water X dollars per unit of water. But without, they had their, obviously that's transportation, but not the delivery cost, right? You weren't buying delivery services from them, correct? That's correct, Your Honor. It just deals strictly with American Lake Water. Okay, all right. So X dollars. Now, at the end of the day, when Plainfield, after they bought their water and had it delivered, were they paying less or more than Bowling Brook was? The answer to that question, and here's the distinction, they were paying less to American Lake Water. The fact that they may have ultimately had to pay more to get it from Bedford Park into their village because they had to add another leg of transportation onto that has nothing whatsoever to do with this analysis or this case. This is all about the relationship and the charges by American Lake Water to the customer. The fact that my opponents want to complicate this and create a vision that, no, we're actually paying more because we have to pay for another leg of transportation. That has nothing to do with this. That's simply by virtue of the fact that they need to move it from the destination point to which American Lake Water delivers somewhere else. That should not be, in our view, any part of the analysis here, as we point out in the papers. The analysis stops after American Lake Water's provided its service, and that's where the apples to apples analysis comes in, and that's why the reimbursement effectively lowers what Plainfield is paying to American Lake Water. It's illustrated on those invoices very clearly and is exactly what was stated, and if I may refer the court to C-1816 of the record for convenience at a later date. Mr. Fricke, who was the general manager of the predecessor company of American Lake Water, stated before the Illinois Commerce Commission that CWRC would offer service to potential new customers on a negotiated basis, but that CWRC is contractually committed not to offer terms and conditions to new customers which are more favorable to those contained in the existing Lake Michigan Water delivery agreements with Bolingbrook and CUCI, which is the predecessor to Illinois American. It's all about a contractual agreement that we're not going to offer better terms to a new customer. The new term, the better term in a new customer is Plainfield and a reimbursement that wasn't enjoyed by Illinois American. But didn't he just say for water delivery? Well, you see again, in the spirit of confusion, water delivery and transportation are just labels put on two different contracts. It's moving water from point A to point B and point B to point C. But point B to point C is a different service as identified by the rate making authority, the ICC. That is different and it is a different service and you have a different ability to charge for that. It used to be in the old days it was all the same thing. Now it is unbundled, even if you might get a bill that looks like it's the same. Point A to point B, that's delivery where you get the water from Lake Michigan from Bedford Park that comes to a holding tank in your community and then it's dispersed out from there. The dispersing out to somewhere else after that, maybe you don't need it because you own the lines and you transmit it yourself, but they deliver it and that B to C is something else that can be charged for independent of the A to B. And if there was no B to C, there is no 10 cent rebate. So they put it on as a rebate as if it was from the A to B, but if there wasn't that contract of B to C, there would be no 10 cent. You're saying it doesn't matter, 10 cent shows up on their bill, we don't care what else they're paying for, we want our 10 cent down. But you don't have B to C charges from them. So is it just a contract or do you have to look at whether or not this is something that's allowable under the tariff or whether they would have to split those bills out? I don't think that's just a matter of your contract. I think that's a matter of, because I think the ICC is who determined whether, I mean, going back in the history, were you going to get two bills for transmission and delivery of your electrical? Well, no, they said they could still remain the same even though they really weren't the same anymore. I think this is pretty much in the nature of the same thing, which is why it isn't just a clear cut, you breached a contract. And I would simply respond in this fashion if I may, Your Honor. That B to C section with American Lakewater and its agreement with the Village of Plainfield, that's their retail. That is not part of the IC regulatory scheme. American Lakewater is a wholesaler of water. And so it's two different scenarios. That's a private agreement that these two parties entered into that said we're going to charge you X to move the water from point B to point C. And I would submit that that's not part of an overall scheme, and there's no need to determine whether or not those two should be separate or together. In our view, it's very clear that the only issue here is what American Lakewater failed to do. And I think Mr. Fricke summed up what the intention of the parties were at the time in his ICC testimony. That would be my response to that question. I don't see any other questions. Thank you very much. Thank you. As I indicated in the initial argument, there are three dispositive and separate sources that confirm that what Bollingbrook seeks is rate relief. Counsel has not attempted to dispute any of that. He's not attempted to undermine his own witness' testimony, what he's said in the complaint, and what he's indicated in his briefing before this court. He says, well, he says, no, we're not complaining about service, but they're complaining about the charge for the service. They may not be complaining about the quality of the service, but certainly they're complaining about the charge for the service. And it's not true to say that the only Supreme Court's never dealt with or has only dealt with adequate service cases. Look at Poussé-Terry. Poussé-Terry is essentially a fraud claim, where they're saying that I believe it was people's gas in that claim case was overcharging because they weren't submitting the documentation that they should have been submitting. It was overcharging a class of consumers. And that's not an inadequate service case. That is, you charged us too much, and it's a rate reparation claim. I would also say that, and we'll go into this in a lot of detail, so I'll keep it short, but there are strong public policy reasons for why the ICC should have jurisdiction in this case. I mean, this court can deal with and resolve the dispute between the ICC has the bigger picture it's concerned about. It's concerned about whether rates are reasonable, about uniform treatment of rates. And so if Bolingbroke is successful in this case, that's going to increase cost to purchase water, and that increased cost of water will get presumably implicated in the rate making process. Well, but in this case, it would be, I mean, if Lake Water had a contract with Bolingbroke, and if they made a bad contract, if it should be found, if there is a breach, then you can't say, well, don't find this breach of our contract, assuming you breached it, because if you do that, it's going to cost other consumers money. I mean, either you breached it or you didn't. Yeah, and I wouldn't dispute that, Justice Schmidt, obviously, if it's a breach. But my point is that there are policies underpinning the Public Utilities Act that demonstrate why the ICC should take this case, which involves a rate dispute, because this kind of case could impact other rate payers. That's my only point. And the ICC is better equipped than a court to resolve this dispute. The ICC has approved and issued a tariff. The ICC understands the infrastructure at play. It understands the A to the B and the B to the C, Justice O'Brien. It understands what those services are. It understands the infrastructure that supports the services. And I would say that resolving a rate dispute is in the heartland of what the ICC does. It certainly up there is what it does on a fairly continual basis. And, Justice Schmidt, you were getting to a hypothetical I just wanted to address and put some dollar amounts around. So the water delivery service from Bedford Park to the point of delivery, water delivery service, that was about $3 per unit or per thousand gallons. That's what lake water charges. Then Plainfield, because it wasn't located at the point of delivery, needed water transportation service. That's what Illinois American provided. That was $0.20 per unit. So Plainfield is effectively, just to get water into its door, that's boundary essentially, paying $3.20 thereabouts per unit. Now lake water reimburses half of the $0.20. So effectively, Plainfield is paying about $3.10 to get water to its door. Bolingbrook only pays $3.00. Bolingbrook doesn't need water transportation. Bolingbrook doesn't need water transportation because it's located at the point of delivery and its water gets distributed effectively at the point of delivery. So that's my point. If you're going to combine the cost to purchase water or just look at invoices, then you have to look at what each party paid, what Plainfield paid and what Bolingbrook paid, and did Plainfield pay more? I mean, ultimately, our position, though, is more refined. It's did both Plainfield and Bolingbrook pay the same rate for water delivery? That's a good point. And the answer to that question is yes. And that's not disputed. Right. And we heard that today. So, again, I would respectfully request that court find that the circuit court did not have jurisdiction to resolve this dispute, that it dismiss this case, not remand it. This case was never filed in front of the ICC. It was filed in court. The court never had jurisdiction. The court should dismiss the case. Should it find that the circuit court had jurisdiction, we request that it reverse the breach finding for the 2004 to 2008 time period. Thank you. Thank you. Thank you both for your arguments here today, all of you, for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. All right. Thank you.